IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GERTHA BATES,                          )
                                       )
                    Plaintiff,         )
                                       )
        v.                             )
                                       )
DR. RANDY J. DUNN, State               )        Case No. 06 C 1457
Superintendent of Education and JESSE H. )
RUIZ,[1] Chairman of Illinois State Board of )
Education,                             )
                                       )
                    Defendants.        )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Gertha Bates filed the present one-count Amended Complaint against

Defendants Dr. Randy J. Dunn, the former Illinois State Superintendent of Education, and Jesse

H. Ruiz, the Chairman of the Illinois State Board of Education ("ISBE") – in their official

capacities – alleging that Defendants deprived her of her liberty interests without due process of

law. *See* 42 U.S.C. § 1983. Before the Court is Defendants' Motion For Summary Judgment

pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants

Defendants' motion.

## BACKGROUND

### I.    The Parties

From approximately 1999 through 2007, Bates worked as a substitute teacher for the

Chicago Public Schools ("CPS"). (R. 45-1, Defs.' Rule 56.1 Stmt. Facts ¶ 1.) Defendant Dr.

---

[1] Because the Chairman of the Illinois State Board of Education is Jesse H. Ruiz – not
"Jamie," "Jaime," or "Jeese" H. Ruiz, the Court substitutes Jesse H. Ruiz as a defendant.

Randy J. Dunn is the former Superintendent of Education for the State of Illinois. (*Id*. ¶ 2.)

Dunn's responsibilities as Superintendent included serving as the Chief Executive Officer of pre-

Kindergarten through twelfth grade education for the State of Illinois. (*Id*.) At all relevant times

to this lawsuit, Defendant Jesse H. Ruiz was the Chairman of the ISBE. (*Id*. ¶ 3.) His

responsibilities included presiding over board meetings, appointing members to standing and

temporary committees and advisory bodies, appointing board members to act on behalf of the

board in specified circumstances, and performing other vested duties. (*Id*.)

## II.       Illinois State Board of Education

The ISBE is the state agency authorized by Illinois law to set standards for teaching,

supervising, and holding other certificated employment in the public schools. (*Id*. ¶ 10.) The

ISBE also administers the certification process; approves and evaluates teacher and administrator

preparation programs; enters into agreements with other states for reciprocal approval of teacher

and administrator preparation programs; establishes standards for the issuance of new types of

certificates; and takes other actions relating to improving teaching in the public schools. (*Id*.)

The ISBE is comprised of several departments, one of which is the Division of Certification.

(*Id*.) The ISBE has employed Dennis Williams for approximately fifteen years. (*Id*. ¶ 11.)

From 2001 until 2006, Williams worked as Division Administrator at the ISBE. (*Id*. ¶ 12.) His

duties as Division Administrator involved overseeing the entire certification system, which

included certification of teachers and administrators. (*Id*.)

## III.      Illinois' Teacher Certification Process

In Illinois, an individual can get a substitute teaching certificate before taking and

passing the Illinois Certificate Testing System's ("ICTS") Basic Skills Test, Content Area Test,

and the Assessment of Professional Teaching Test.  (*Id*. ¶ 13.)  A substitute certificate allows an individual to teach in a school for up to 120 days per year on a substitute basis.  (*Id*.)  A substitute certificate is not a full teaching certificate.  (*Id*.)  To become a fully certified teacher in Illinois, a teacher must complete an approved program at an accredited university.  (*Id*. ¶ 14.)  The teacher must also pass the above-mentioned ICTS tests.  (*Id*.)  In Illinois, a newly certified teacher gets an initial certificate that lasts for four years.  (*Id*.)  During that time, the teacher must complete professional development after which she receives a standard certificate that is renewable every five years.  (*Id*. ¶ 15.)  An initial certificate is required before a teacher can obtain a standard certificate.  (*Id*.)  The testing company – National Evaluations Systems ("NES") –  administers the teaching tests and analyzes the test scores.  (*Id*. ¶¶ 16, 17.)  The NES also notifies the ISBE if someone took the test and did not pass, but then took the test again and got a significantly higher score based on NES' statistical analysis.  (*Id*. ¶ 17.)

  As Division Administrator, Williams reviewed the test scores via an electronic transfer through a secure site to the ISBE's database.  (*Id*. ¶ 18.)  Once the scores get to the ISBE's database, the database reads them as "pass" or "fail" and records them in the Teacher Certification Information System.  (*Id*.)  In the event that an individual's test materials reveal irregularities that warrant further investigation, the ISBE forwards those materials to the appropriate law enforcement authority and notifies the affected person(s).  (*Id*. ¶ 20.)  The Illinois Administrative Code provides that an applicant's score will be voided, if "any person taking the test engages in any form of misconduct ... having the purpose or effect of ... representing the performance of the named registered examines by the performance of another person."  (*Id*. ¶ 21.)  Based on his experience, Williams contends that the test center may void

anywhere from six to twelve test scores a year.  (*Id*. ¶ 22.)

## IV.    Bates' Educational Background and Employment with the CPS

In 1982, Bates earned her bachelor's degree in psychology from Mobile College (now called the University of Mobile) in Alabama.  (*Id*. ¶ 27;  R. 60-1, Pl.'s Rule 56.1 Stmt. Add'l Facts ¶ 1.)  In 1994, Bates earned a master's degree in urban teaching from Concordia University in River Forest, Illinois.  (Defs.' Stmt. Facts ¶ 28; Pl.'s Stmt. Facts ¶ 1.)  Between 1999 and 2003, Concordia contacted Bates about taking additional classes so that Concordia could submit her application for a teaching certificate to the State.  (Defs.' Stmt. Facts ¶ 29.)  In furtherance of the certification process, Bates took two additional classes at Prairie State College.  (*Id*.; Pl.s' Stmt. Facts ¶ 1.)

Bates' last employment with the CPS was in a temporary assigned substitute position teaching fifth grade at Mahalia Jackson Elementary School.  (*Id*. ¶ 23, Pl.'s Stmt Facts ¶ 5.)  Before working at Mahalia Jackson Elementary, Bates worked from 1999 to 2004 at Aldridge Elementary School – which is also part of the CPS – teaching second and fifth grade.  (Defs.' Stmt Facts ¶ 24; Pl.'s Stmt. Facts ¶ 6.)  Bates also worked in the CPS as a provisional teacher, which is a substitute teacher who works everyday at the same school.  (Defs.' Stmt. Facts ¶ 25; Pl.'s Stmt. Facts ¶ 3.)  Starting in 1996, Bates had a substitute teaching certificate.  (Defs.' Stmt. Facts ¶ 26.)  While Bates worked at Aldridge Elementary School, the CPS sent her a letter informing her that all teachers needed to become fully certified teachers within two years to continue their work.  (Defs.' Stmt. Facts ¶ 33; Pl.'s Stmt. Facts ¶ 10.)

## V.    Bates' February 2004 Basic Skills Test

Prior to 2004, Bates had taken the Basic Skills Test approximately four times, but she did

not receive a passing score.[2] (*Id.* ¶ 30.) On February 21, 2004, Bates maintains that she took the Basic Skills Test again. (*Id.* ¶ 36; Pl.'s Stmt. Facts ¶ 16.) Thereafter, Williams' staff discovered that the test administrators, NES, noticed a statistical discrepancy in Bates' February 2004 Basic Skills Test score compared with her most recent score from June 2003. (Defs.' Stmt. Facts ¶ 39.) Based on NES' notification, Williams signed a letter addressed to Bates dated March 24, 2004, informing her of the discrepancy due to the testing service's statistical analysis and an upcoming analysis of her handwriting. (*Id.* ¶ 41; Pl.'s Stmt. Facts ¶¶ 17, 20.) In April 2004, Bates responded to Williams' letter stating that she had not seen her test results and gave possible explanations for her improved score, including her participation in a Basic Skills Test preparation course. (Pl.'s Stmt. Facts ¶ 21.) Nevertheless, the ISBE sent Bates' tests to the Illinois State Police for a handwriting analysis. (Defs.' Stmt. Facts ¶ 42.) Richard Johnson, a forensic scientist with the Illinois State Police, reviewed Bates' tests and analyzed her handwriting. (*Id.*) On or about June 25, 2004, Johnson issued a report that the handwriting analysis failed to establish that Bates took the February 2004 Basic Skills Test. (*Id.*)

Although Bates had requested a response to her April 2004 letter on a couple of occasions, Williams eventually sent Bates a response dated October 8, 2004, informing her that under Illinois law "no person may be granted a teaching certificate who has knowingly altered or misrepresented his or her teaching qualifications" and that based on the handwriting analysis, "[c]laiming the February 21, 2004 test results as your own constitutes misrepresentation of your qualifications." (*Id.* ¶ 43, Ex. H, Oct. 8, 2004, Williams' letter; Pl.'s Stmt. Facts ¶¶ 22, 23, 24.)

---

[2] It is undisputed that Bates has never taken the Assessment of Professional Testing Test. (Defs'. Stmt. Facts ¶ 32.)

In his letter, Williams also asked Bates to respond in writing and provide facts and evidence to exonerate herself. (Defs.' Stmt. Facts ¶ 43.) In March 2005, Williams signed a letter addressed to Bates that included a copy of the Illinois State Police report regarding the handwriting analysis. (*Id.* ¶ 46.)

In July 2005, Bates submitted a handwriting sample at the State of Illinois Building in Chicago. (*Id.* ¶ 52.) Analysis of Bates' July 2005 handwriting sample did not change the Illinois State Police's conclusion that the handwriting failed to establish that Bates took the February 2004 Basic Skills Test. (*Id.* ¶ 53.) Williams signed a letter addressed to Bates dated March 3, 2006, reporting such. (*Id.*) The ISBE voided Bates' February 2004 score, and thus she was not eligible to receive an initial teaching certificate in 2004. (*Id.* ¶¶ 54, 55.) Moreover, the March 3, 2006, letter informed Bates that the ISBE would deny all future applications for certification based on Bates' misrepresentation about her February 2004 Basic Skills Test. (*Id.* ¶ 55; Ex. K, March 3, 2006, Williams' letter; Pl.'s Stmt. Facts ¶ 33.) In June 2007, Bates' substitute teaching certificate expired and the ISBE denied her application for renewal. (Pl.'s Stmt. Facts ¶ 27.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving

party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

<u>ANALYSIS</u>

## I.      Eleventh Amendment Immunity

Defendants first contend that the Eleventh Amendment bars official capacity claims for damages, and thus the Court should grant summary judgment as to any damages claims against Dunn and Ruiz in their official capacities. Under the Eleventh Amendment, federal courts are prohibited from entertaining suits by private parties against states and their agencies unless the state unequivocally waives its Eleventh Amendment protections or Congress abrogates the state's Eleventh Amendment immunity. *Board of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed. 2d 866 (2001); *Peirick v. IUPUI Athletics Dept.,* 510 F.3d 681, 695 (7th Cir. 2007). A plaintiff who seeks prospective equitable relief for ongoing violations of federal law, however, may bring a claim against a state official under the *Ex Parte Young* doctrine. *Peirick,* 510 F.3d at 695 (citing *Ex Parte Young*, 209 U.S. 123, 159-60, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Under the Eleventh Amendment, state agencies and state officials in their official capacities are also immune from lawsuits seeking money damages. *See Joseph v. Board of Regents of the Univ. of Wis. Sys.,* 432 F.3d 746, 748 (7th Cir. 2005); *Gleason v. Board of Educ. of Chicago,* 792 F.2d 76, 79 (7th Cir. 1986) (ISBE is an Illinois state agency for Eleventh

Amendment purposes).

Accordingly, although Bates cannot seek money damages from Dunn and Ruiz in their official capacities, her claims for equitable relief are proper under the *Ex Parte Young* doctrine. Therefore, the Court grants Defendants' summary judgment motion as the compensatory damages in the amount of $250,000 that Bates seeks in her Amended Complaint.

## II.     Procedural Due Process Claim

In her one-count Amended Complaint, Bates alleges that Defendants deprived her of her liberty interests without due process of law.[3]  *See* 42 U.S.C. § 1983.  The Due Process Clause of the Fourteenth Amendment provides that no one may "be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  "Due process usually means notice and an opportunity for a hearing."  *Goros v. County of Cook*, 489 F.3d 857, 859 (7th Cir. 2007).  To establish a procedural due process claim, Bates must first show that she was deprived of a constitutionally protected interest in life, liberty, or property.  *Belcher v. Norton,* 497 F.3d 742, 750 (7th Cir. 2007); *see also Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  If Bates establishes that she has a protected interest, the Court must then determine what process was due.  *See Belcher,* 497 F.3d at 750.

Here, Bates contends that the State deprived her of her liberty interest to pursue her chosen profession of teaching.  The "'right to work for a living in the common occupations of

---

[3]  In her Response Brief, Bates does not argue that she has a property interest in her continued employment with the CPS.  *See Evans v. City of Chicago,* 434 F.3d 916, 929 (7th Cir. 2006) (citing *Fumarolo v. Chicago Board of Educ.,* 142 Ill.2d 54, 107, 153 Ill.Dec. 177, 566 N.E.2d 1283 (1990) ("a property interest in employment as a tenured teacher can be created where there is a legitimate expectation of continued employment")).  The absence of any discussion concerning Bates' claim based on any such property interest amounts to an abandonment of this claim.  *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007).

the community' is a form of liberty interest originating in the Constitution." *Becker v. Illinois Real Estate Admin. & Disciplinary Bd.,* 884 F.2d 955, 957 (7th Cir. 1989) (citation omitted). The Seventh Circuit has recognized certain professions as "common occupations," including attorney, nurse, physician, police officer, schoolteacher, and psychologist. *Id.* As the Seventh Circuit explains, "[i]n Illinois, individuals seeking entry into these professions typically must meet certain age and schooling requirements. Moreover, they must pass a state-sponsored, occupation-specific exam as part of the application process." *Id.* The Seventh Circuit later explained that in *Becker*, "we held that an individual who successfully satisfies the statutorily mandated educational requirements for a professional license and who passes a state-sponsored examination has a protected interest in pursuing his profession." *See DeSalle v. Wright*, 969 F.2d 273, 277 (7th Cir. 1992).

Bates does not have an initial or standard certificate to teach in the Illinois schools. Instead, Bates only possessed a substitute teaching certificate. As Defendants correctly maintain, there are no state-imposed testing requirements to obtain or maintain a substitute teaching certificate. Thus, the *Becker* and *DeSalle* decisions do not support Bates' argument that she has a protected liberty interest in her substitute teaching certificate. Indeed, the *DeSalle* decision makes clear that in order to have a protected interest, Bates must satisfy the statutorily mandated educational requirements for a teaching certification, including passing the state-sponsored examinations. *See DeSalle,* 969 F.2d at 277. Here, it is undisputed that Bates did not pass the requisite tests for certification in Illinois, including the Basic Skills Test and the Assessment of Professional Testing Test. Because Bates has not met the requirements for an initial or standard teaching license, "[s]he has no claim of entitlement, and consequently [s]he

9

has no protected interest." *Id.*

Bates also asserts that Defendants' conduct damaged her reputation and impaired her ability to pursue a career in her chosen occupation. "It is well-settled that an individual has no cognizable liberty interest in his reputation." *Boyd v. Owen,* 481 F.3d 520, 524 (7th Cir. 2007) (internal quotations and citation omitted); *see also Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) ("interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law."). Nevertheless, "when a state actor casts doubt on an individual's good name, reputation, honor or integrity in such a manner that it becomes virtually impossible for the [individual] to find new employment in his chosen field, the government has infringed upon that individual's liberty interest to pursue the occupation of his choice." *Boyd,* 481 F.3d at 524 (internal quotations and citation omitted). To prevail on her claim that Defendants infringed her liberty interest to pursue her occupation, Bates must show that: (1) Defendants' actions stigmatized her; (2) Defendants publicly disclosed stigmatizing information; and (3) she suffered a tangible loss of other employment opportunities resulting from the public disclosure. *See Dupuy v. Samuels,* 397 F.3d 493, 509-10 (7th Cir. 2005); *see also McMahon v. Kindlarski,* 512 F.3d 983, 988 (7th Cir. 2008) (plaintiff must show defendants called into question her "good name, reputation, honor or integrity" in a way that made it "virtually impossible for the employee to find new employment in his chosen field.").

The first element requires Bates to show that a public official made a defamatory statement about her. *See Strasburger v. Board of Educ., Hardin County School Dist.*, 143 F.3d 351, 356 (7th Cir. 1998). Bates does not address this element in her brief, nor does she present any evidence creating a genuine issue of material fact that a public official made a defamatory

statement about her, namely, that a public official made "false assertions of facts." *See id.* ("true but stigmatizing statements that preclude further government employment do not support this type of claim"). Likewise, under the second element, Bates fails to present evidence that any such defamatory statement was publicly disclosed or announced. *See Hedrich v. Board of Regents of Univ. of Wis. Sys.,* 274 F.3d 1174, 1184 (7th Cir. 2001). Specifically, Bates points to no evidence that Defendants publically disseminated information concerning the circumstances surrounding her February 2004 Basic Skills Test scores and the subsequent denial of a teaching certification. *See, e.g., Franklin v. City of Evanston*, 384 F.3d 838, 845 (7th Cir. 2004). Under the third element, Bates must show that she suffered a tangible loss of other employment opportunities because of the public disclosure of the stigmatizing information. *See Bordelon v. Chicago School Reform Bd. of Trs.*, 233 F.3d 524, 531 (7th Cir. 2000) ("It is not enough that the employer's stigmatizing conduct has some adverse effect on the employee's job prospects; instead, the employee must show that the stigmatizing actions 'make it virtually impossible for the employee to find new employment in his chosen field.'") (citation omitted). Again, Bates does not address this third element in her brief or present facts supporting any such claim, and thus she has not established that she has a protected liberty interest in her right to pursue her chosen profession of teaching. *See Treadwell v. Office of Ill. Sec'y of State,* 455 F.3d 778, 781 (7th Cir. 2006) ("The party opposing summary judgment [] bears the burden of coming forward with properly supported arguments or evidence to show the existence of a genuine issue of material fact.").

Because Bates has failed to set forth evidence creating a genuine issue of material fact that she has a protected liberty interest in her chosen profession, the Court need not determine

whether Bates was afforded due process under state law. *See McMahon,* 512 F.3d at 988;

*Belcher,* 497 F.3d at 750. The Court therefore grants Defendants' summary judgment motion.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court grants the Defendants' Motion for Summary

Judgment.

Dated: February 28, 2008

**ENTERED**


**AMY J. ST. EVE
United States District Court Judge**